IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALVIN PERKINS (#R-22915), | ) | |
| | ) | |
| Plaintiff, | ) | 15 C 6186 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| TARRY WILLIAMS and TRACY ENGLESON, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Alvin Perkins brings this *pro se* 42 U.S.C. § 1983 suit against Tarry Williams, at all relevant times the Warden of Stateville Correctional Center, and Tracy Engleson, at all relevant times the Superintendent of Stateville's Northern Reception and Classification Center ("NRC"), alleging that he was subjected to unconstitutional conditions of confinement, in violation of the Eighth Amendment, from December 2013 to December 2014. Doc. 16. Defendants move for summary judgment. Doc. 58. The motion is granted in part and denied in part.

### Background

Consistent with the local rules, Defendants filed a Local Rule 56.1(a)(3) statement of undisputed facts with their summary judgment motion. Doc. 60. The relevant factual assertions in the Local Rule 56.1(a)(3) statement cite evidentiary material in the record and are supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph."). Also consistent with the local rules, Defendants served on Perkins a Local Rule

56.2 Notice, which explains what Local Rule 56.1 requires of a *pro se* litigant opposing summary judgment. Doc. 61.

The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*, 791 F.3d 764, 767 (7th Cir. 2015) (citing cases); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."); *Patterson v. Ind. Newspapers, Inc.*, 589 F.3d 357, 360 (7th Cir. 2009) (same). Perkins's *pro se* status does not excuse him from complying with Local Rule 56.1. *See McNeil v. United States*, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011) ("Though courts are solicitous of *pro se* litigants, they may nonetheless require strict compliance with local rules."); *Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir. 2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a *pro se* litigant.") (citation omitted); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

Local Rule 56.1(b)(3)(B) required Perkins to file a "concise response to [Defendants' Local Rule 56.1(a)(3)] statement … contain[ing] a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R.

56.1(b)(3)(B). Perkins filed a Local Rule 56.1(b)(3)(B) response, which denies some of Defendants' Local Rule 56.1(a)(3) assertions. Doc. 63 at 1-12. But Perkins, in violation of Local Rule 56.1(b)(3)(B), failed to support his denials with citations to anything in the record, so his denials will be disregarded. Accordingly, as the local rules provide, the court accepts as true the facts set forth in Defendants' Local Rule 56.1(a)(3) statement. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Olivet Baptist Church v. Church Mut. Ins. Co.*, 672 F. App'x 607, 607 (7th Cir. 2017) ("The district court treated most of the [defendant's] factual submissions as unopposed, because the [plaintiff] failed to contest them in the form required by Local Rule 56.1(b). We have held that the district court is entitled to enforce that rule in precisely the way it enforced the rule in this litigation."); *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015) ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion.") (citation omitted).

That said, the court is mindful that "a nonmovant's failure to respond to a summary judgment motion or failure to comply with Local Rule 56.1 … does not … automatically result in judgment for the movant. [The movant] must still demonstrate that it is entitled to judgment as a matter of law." *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 884 (7th Cir. 2012) (citations omitted). The court therefore will recite the facts in the Defendants' Local Rule 56.1(a)(3) statement, viewing the facts and inferences therefrom as favorably to Perkins as the record and Local Rule 56.1 allow. *See Canen v. Chapman*, 847 F.3d 407, 412 (7th Cir. 2017). The court then will determine whether, on those facts, Defendants are entitled to summary judgment. At

this juncture, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am., LLC*, 805 F.3d 278, 281 (7th Cir. 2015).

Williams was Warden of Stateville and the NRC from April 2014 to July 2015. Doc. 60 at ¶ 2. Engleson was Superintendent of the NRC from 1998 to 2016. *Id*. at ¶ 3. Perkins is an inmate in the custody of the Illinois Department of Corrections ("IDOC") presently housed at Menard Correctional Center. *Id*. at ¶ 1. Perkins entered the NRC on or about December 9, 2013, and was transferred to Pontiac Correctional Center on or about December 9, 2014. *Id*. at ¶¶ 5, 56.

While at the NRC, Perkins was issued one bar of soap per week, and was permitted to buy two additional bars of soap per month at the commissary. *Id*. at ¶¶ 11-12. The bars sold at the commissary were three to four times larger than the bars issued weekly. *Id*. at ¶ 13. Perkins bought one bar of Ivory soap in January 2014, and then two bars of Ivory soap per month from February 2014 to October 2014. *Id*. at ¶ 14.

Perkins was issued one tube of toothpaste, about a finger and a half long, once per week or every two weeks, and was permitted to buy toothpaste and toothbrushes at the commissary. *Id*. at ¶¶ 16-17. Perkins bought 4.2-ounce tubes of toothpaste in January 2014, March 2014, May 2014, June 2014, and October 2014, and 5-packs of short-handled toothbrushes in January 2014, March 2014, April 2014, May 2014, June 2014, July 2014, August 2014, September 2014, October 2014, and December 2014. *Id.* at ¶¶ 18-19.

The jumpsuit and sheet that Perkins was issued upon entering the NRC smelled "like a factory." *Id*. at ¶ 20. During his year at the NRC, Perkins was never given a replacement jumpsuit and his jumpsuit was never washed. *Id*. at ¶ 21. Perkins purchased a laundry bag from the commissary in May 2014 and was told repeatedly to turn his linen in; he put his linen on his

4

door "a couple times," but it was never taken to the laundry. *Id.* at ¶¶ 22-23. Perkins was able to use soap and water in his cell to try to clean his clothes. *Id.* at ¶ 24. Perkins developed a rash that he believed was caused by a lack of soap and clean clothes. *Id.* at ¶ 25.

Perkins observed mice and roaches in his cell on a daily basis, and observed mouse droppings in his cell "a couple times." *Id.* at ¶¶ 29-30, 32. Perkins was never bitten and suffered no physical harm from the mice in his cell. *Id.* at ¶ 31. Perkins also observed gnats in his cell. *Id.* at ¶ 32. Other than being bitten once by a spider, Perkins suffered no physical harm from the insects in his cell. *Id.* at ¶ 33. The Critter Ridder extermination company visited the NRC multiple times per month to provide pest control services. *Id.* at ¶ 34.

Perkins was provided with cleaning supplies on a "hit or miss" basis, and he used them when they were provided. *Id.* at ¶ 35. Perkins believed that the toilet in his cell "hadn't been cleaned in years" and observed that it was "caked" in what he described as a fungus or mold. Perkins developed a rash on his hand as a result of cleaning the substance he described as mold on his toilet. *Id.* at ¶ 39. The vent in Perkins's cell was full of dust buildup that caused him to suffer nausea and experience shortness of breath. *Id.* at ¶ 40. There was a substance Perkins believed was mold in his living unit's showers. *Id.* at ¶¶ 36-38.

Perkins never had contact, either in person or by mail, with Warden Williams or Superintendent Engleson. *Id.* at ¶ 41. During the thirteen times Perkins saw his counselor at the NRC, he never complained about the conditions alleged in this case. *Id.* at ¶ 53. Perkins submitted one grievance, dated October 25, 2014, regarding his conditions of confinement; it focused on his laundry troubles and also mentioned the inadequate supply of soap and unsanitary state of the shower and toilet. *Id.* at ¶ 54; Doc. 60-5.

5

**Discussion**

Perkins complains in this suit of seven conditions: (1) infestation by mice, roaches, and other insects; (2) "hit or miss" access to cleaning supplies; (3) inadequate access to personal hygiene products; (4) lack of laundry services; (5) dust buildup in the vent in his cell; (6) mold in his cell's toilet; and (7) mold in his living unit's shower. To establish an Eighth Amendment violation as to prison living conditions, an inmate must be able to demonstrate that: (1) the conditions were so adverse that they deprived him "of the minimal civilized measure of life's necessities" (the objective prong); and (2) the defendants acted with deliberate indifference with respect to the conditions (the subjective prong). *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Defendants seek summary judgment on all of Perkins's claims, arguing that the conditions were not objectively serious enough to establish a constitutional violation and that they had insufficient personal involvement to be held liable. Because the majority of Perkins's allegations fall short on the deliberate indifference prong, the court will address it first.

**I.    The Subjective/Deliberate Indifference Prong**

To show deliberate indifference in an Eighth Amendment conditions-of-confinement case, the plaintiff must identify evidence indicating that jail officials knew about the condition but refused to take reasonable steps to resolve it. *See Gray v. Hardy*, 826 F.3d 1000, 1008 (7th Cir. 2016) ("The warden must have known of and disregarded an excessive risk to inmate health or safety.") (internal quotation marks and brackets omitted). "[I]t is not enough for the inmate to show that the official acted negligently or that he or she should have known about the risk." *Townsend*, 522 F.3d at 773. A plaintiff instead must show that the official "actually knew

of" a dangerous condition and "consciously disregarded it nonetheless." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004). However, a jury may infer that senior prison officials are aware of "systemic, as opposed to localized," conditions. *Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir. 1999); *see also Gray*, 826 F.3d at 1008-09 (noting that the systemic-conditions principle applies at summary judgment).

Defendants argue that they are entitled to summary judgment because the record would not allow a reasonable juror to find that they had personal knowledge of the conditions of Perkins's confinement. Doc. 59 at 9-10. Defendants' Local Rule 56.1(a)(3) statement does not reference any direct evidence that Williams or Engleson were aware of the conditions that Perkins endured, much less that they were deliberately indifferent to those conditions. Perkins testified that he never had any contact with Williams or Engleson. Doc. 60 at ¶ 41. He submitted only one grievance to his counselor, dated October 25, 2014, *id*. at ¶ 54, which addressed his laundry troubles, the inadequate supply of soap, and the unsanitary state of the shower and toilet, Doc. 60-5. The record gives no reason to believe that Williams or Engleson were notified of the grievance's contents in the forty-five days between its submission and Perkins's transfer out of the NRC. Doc. 60 at ¶ 56.

Because the record has no direct evidence that Williams and Engleson were aware of the conditions Perkins endured, he must rely on the inference, permitted by *Antonelli* and *Gray*, that senior prison officials are aware of "systemic" problems in their facilities. But several of the conditions of which Perkins complains were purely individual matters. The dust buildup in the vent and the mold in the toilet were problems with Perkins's individual cell, and there is no indication in the Local Rule 56.1(a)(3) statement that those conditions were present throughout

7

the prison. Perkins's difficulty getting laundry service also, on this record, was an individual matter. Perkins testified that prison guards repeatedly told him to put his laundry out for collection and that he left his laundry bag on his door "a couple times" but that nobody collected it. *Id.* at ¶ 22. Nothing in the Local Rule 56.1(a)(3) statement would allow a juror to conclude that there was a systemic lack of laundry services at the NRC as opposed to an occasional failure to collect Perkins's laundry. (The laundry claim cannot satisfy the objective prong for essentially the same reason: there is no evidence that the prison actually deprived Perkins of laundry services, rather than simply failing to collect his laundry on two discrete occasions.)

The mold in the living unit's shower presents a somewhat closer question because the shower was presumably shared by many inmates, but it still does not qualify as a "systemic" issue. Mold in a particular shower facility is "localized" to that particular shower. *See Antonelli*, 81 F.3d at 1429-34 (holding, at the pleading stage, that denials of the plaintiff's requests to attend religious services, taking and destruction of his property by jail staff, and ignoring his requests for psychological treatment were "clearly localized," while pest infestation, nutritionally inadequate food, restrictive exercise and library policies, invasive mail opening, failure to provide blankets, and constant excessive noise at night were "potentially systemic"). A jury cannot infer, without more evidence, that a senior prison official knew about a mold problem in just one of the prison's showers, and the Local Rule 56.1(a)(3) statement refers to no evidence that the prison had a systemic mold problem. All that the Local Rule 56.1(a)(3) statement reveals is mold on Perkins's cell toilet and the shower that he used. Williams and Engleson cannot be expected, even with the inference allowed by *Antonelli* and *Gray*, to have known of those specific conditions.

The three remaining conditions—the infestations, the inadequate access to personal hygiene products, and the "hit or miss" access to cleaning supplies—are all arguably systemic, and therefore a jury could infer that Williams and Engleson were aware of what Perkins was enduring and consciously disregarded the risk of harm. As the Seventh Circuit has held, it is reasonable to infer that prison officials are aware of pest infestations, which affect the entire facility. *See Gray*, 826 F.3d at 1008 ("[A] jury could infer that the warden was aware of the pest infestations in the facility."). And high-ranking officials can be deliberately indifferent to an infestation even if, as here, Doc. 60 at ¶ 34, the prison has an extermination company visit the facility regularly. *See Gray*, 826 F.3d at 1009 (holding that an infestation claim survived summary judgment even though the prison had "monthly exterminator visits" because "[k]nowingly persisting in an approach that does not make a dent in the problem is evidence from which a jury could infer deliberate indifference"). The two other conditions are systemic as well where, as here, Doc. 60 at ¶¶ 11-12, 16-17, prison policy determines an inmate's access to personal hygiene products and cleaning supplies. *See Antonelli*, 81 F.3d at 1432-33 (holding that providing nutritionally inadequate food and failing to provide blankets are potentially systemic).

## II. The Objective/Minimal Life's Necessities Prong

The next question is whether those three conditions, individually or in combination, satisfy the objective prong of Perkins's Eighth Amendment claim. To satisfy that prong, Perkins must demonstrate "that, objectively, the deprivation he suffered was sufficiently serious; that is, it must result in the denial of the minimal civilized measure of life's necessities." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (internal quotation marks omitted). The necessities of life include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Gray*,

826 F.3d at 1005 (internal quotation marks omitted). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim" because "routine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 501 U.S. 1, 9 (1992). "Some conditions … may establish an Eighth Amendment violation in combination when each alone would not do so … when the deprivations have a mutually enforcing effect which produces the deprivation of a single, identifiable human need, such as food or warmth, for example 'a low temperature at night combined with a failure to issue blankets.'" *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

The Seventh Circuit has held that pest infestations may deprive an inmate of the "basic human need of rudimentary sanitation in violation of the Eighth Amendment." *Gray*, 826 F.3d at 1005; *see also Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008) ("We have held that a prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a [constitutional] violation."). In *Smith v. Dart*, 803 F.3d 304 (7th Cir. 2015), an inmate named Smith alleged that "[s]piders, rats, roaches, centerpides [sic], flys [sic], gnats and beetles are on the tier[,] also there are nests of spiders under the radiators[,] roaches and gnats make their home in the showers and toilet area." *Id*. at 312. The Seventh Circuit held that those allegations did not state an Eighth Amendment claim, reasoning that they "left [the court] in the dark as to how extensive the infestations are and how the pests affect [Smith]." *Id*. at 312-13. The court added that Smith "d[id] not allege that pests are present in his cell, or that pests have ever come into contact with his person or his property. … Nor d[id] he allege how often he observes rodents and roaches on the tier." *Id*. at 312. The court thought Smith's allegations "a far cry from those we examined in *Antonelli*, where the plaintiff alleged

10

'cockroaches that were everywhere, crawling on his body (along with mice) and constantly awakening him.'" *Ibid*. (quoting *Antonelli*, 81 F.3d at 1431). The court added that Smith's allegations "d[id] not approach the severity of the conditions that we considered a 'close case,' though sufficient to state a claim, in *White v. Monohan*[, 326 F. App'x 385, 388 (7th Cir. 2009)]," *ibid*., where the plaintiff claimed that "for over five years the bugs, roaches, spiders, wasps, and bees had bitten and stung him so often as to leave multiple scars." 326 F. App'x at 388.

More recently, the Seventh Circuit held that a pest infestation claim survived summary judgment where the plaintiff claimed that "the cell was so infested with cockroaches and earwigs that, despite [the plaintiff's] killing nearly 50 a day, the insects continued to crawl on him at night, keeping him awake." *Bentz v. Hardy*, 638 F. App'x 535, 537 (7th Cir. 2016). In so holding, the court noted that, "depending upon the extent, duration, and kind of infestation an inmate was made to endure, a trier of fact … may reasonably find that an Eighth Amendment violation occurred even without a showing of physical harm." *Id*. at 538 (citing *Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012)).

The Seventh Circuit most recently addressed a pest infestation claim in *Gray v. Hardy*, although it considered the claim in combination with other arguably unconstitutional conditions. The *Gray* plaintiff alleged that the prison was infested with birds, mice, cockroaches, gnats, and other insects, in large part because prison officials failed to fix broken windows and other holes in the prison walls. 826 F.3d at 1004. Gray was unable to do anything about the bird feces, dander, and dust that accumulated because he was allegedly denied adequate access to cleaning supplies. His only towel was replaced every eight months, and he was not permitted to store soap in his cell. *Ibid*. The court did not decide whether the infestation claim, standing alone, was

11

sufficiently serious to support an Eighth Amendment claim. In fact, the court observed that, at least as to the cockroach infestation, Gray's claim was "not quite as awful" as the allegations in *Antonelli* and noted that "we found [in *Sain v. Wood*] no Eighth Amendment violation where a prisoner alleged that he often saw several roaches at a time in his cell, which was treated by an exterminator every six weeks or so and additionally on request." *Id*. at 1005 (citing *Sain*, 512 F.3d at 894). But the court held that Gray's "complaints about the vermin, insects, and birds," together with his complaints that "his towel … was changed only once every eight months and that he was denied adequate cleaning supplies," were enough to withstand summary judgment. *Id*. at 1006.

The severity of Perkins's infestation allegations lies between *Smith* and *Sain*, on the one hand, and *Antonelli*, *Bentz*, and *White*, on the other. The *Smith* plaintiff did not "allege that pests are present in his cell," 803 F.3d at 312, but Perkins says he saw mice and roaches in his cell on a daily basis. Doc. 60 at ¶¶ 29, 32 (citing Doc. 60-1 at 71). The *Sain* plaintiff alleged that, during six years of confinement, he "*often* saw several cockroaches crawling in his cell" and an exterminator would come to his cell on request, 512 F.3d at 894 (emphasis added), but Perkins testified that he saw mice and roaches in his cell every day, and there is no evidence that he was able to request a visit from an exterminator. Yet the plaintiffs in *Antonelli*, *Bentz*, and *White*— where the Seventh Circuit held there to be viable infestation claims—alleged that roaches and mice frequently bit them or crawled on them at night, while the Local Rule 56.1(a)(3) statement here does not indicate that pests ever made contact with Perkins.

The question, then, is whether, under Seventh Circuit precedent, living in a cell where mice and roaches are present every day can qualify as an unconstitutional condition of

12

confinement, even if the pests never bite or touch the inmate. It can. The fact that the mice and roaches apparently never touched Perkins does not meaningfully distinguish his case from *Antonelli*, *Bentz*, and *White*. Whether or not roaches and mice crawl onto an inmate is up to the roaches and mice, not the prison officials who allegedly know of and tolerate the infestation, and so the fortuity of pests making or not making contact with an inmate cannot make the difference between an unconstitutionally severe infestation and a constitutionally tolerable one. Indeed, the Seventh Circuit has emphasized that the mere *presence* of mice and roaches in a cell, even without physical contact, poses a risk of substantial psychological and physical harm sufficient to satisfy the governing standard's objective prong. *See Thomas*, 697 F.3d at 615 ("The potential psychological harm from living in a small cell infested with mice and cockroaches is pretty obvious. Regarding physical harm from involuntary cohabitation with these vermin, we note that cockroaches can transmit bacteria that aggravate asthma and cause other disease, and that inhaling microscopic particles of saliva, dropping, or urine from mice infected with hantavirus can infest a person with [a] potentially fatal [illness]."); *see also Bentz*, 938 F. App'x at 538 ("[A] trier of fact … may reasonably find that an Eighth Amendment violation occurred [during an infestation] even without a showing of physical harm."). Perkins therefore has shown enough to avoid summary judgment on his claim that the cockroach and mice infestations "deprived him of the basic human need of rudimentary sanitation in violation of the Eighth Amendment." *Gray*, 826 F.3d at 1005.

In accord with *Gray*, Perkins may also avoid summary judgment as to any other conditions that may have interacted with the cockroach and mice infestations to exacerbate "the overall lack of a sanitary environment." *Id*. at 1006. That includes Perkins's allegations about the other pests that infested his cell, such as gnats and spiders. *See id*. at 1005-06 (reversing the grant

of summary judgment on a claim alleging "myriad infestations" by birds, mice, roaches, and several other insects without analyzing each infestation separately, and while "assum[ing] for the sake of argument that Gray's deposition testimony about the cockroaches alone may not describe a sufficiently serious condition to meet the first element of the Eighth Amendment test").  It also includes Perkins's "hit or miss" access to cleaning supplies, because irregular access to such supplies may have prevented him from cleaning up after the pests and even attracted more pests to his cell.  Doc. 60 at ¶ 35; *see Gray*, 826 F.3d at 1005-06 (reversing summary judgment on an inadequate cleaning supplies claim combined with an infestation claim).

      A different result obtains for Perkins's claims that he had insufficient access to soap and toothpaste.  Even assuming that a lack of personal hygiene products could exacerbate the sanitation problems caused by a pest infestation, the Local Rule 56.1(a)(3) statement indicates that Perkins had plenty of soap and toothpaste.  Perkins was given one bar of soap per week and was permitted to purchase two bars each week from the commissary, which were three to four times larger than the bar he was given.  Doc. 60 at ¶ 11-12.  Perkins purchased one bar of soap in January 2014 and two bars per month from February to October 2014.  *Id*. at ¶¶ 12, 14.  Perkins was issued one tube of toothpaste, about a finger and a half long, once per week or every two weeks, was permitted to purchase toothpaste and toothbrushes at the commissary, and purchased 4.2-ounce tubes of toothpaste in January, March, May, June, and October 2014.  *Id*. at ¶¶ 16-18.  Perkins also purchased five-packs of short-handled toothbrushes in January, March, April, May, June, July, August, September, October, and December 2014.  *Id*. at ¶ 19.  The court is mindful that an inmate's "limited ability to purchase soap from the commissary does not release the prison from its responsibility to provide access to sanitation," particularly where the inmate is "not

14

permitted to store … soap" and thus "must use it all at once." *Gray*, 826 F.3d at 1004, 1006. But in this case, where Perkins did in fact purchase ample soap and toothpaste and stored it in his cell, he cannot base an Eighth Amendment claim, even in part, on inadequate access to personal hygiene products.

As a final note, the court observes that because Defendants do not seek qualified immunity, they have forfeited any argument that they are entitled to such immunity. *See Sublett v. John Wiley & Sons, Inc.*, 463 F.3d 731, 736 (7th Cir. 2006) ("As a general matter, if the moving party does not raise an issue in support of its motion for summary judgment, … the district court should not rely on that ground in its decision."); *see also Narducci v. Moore*, 572 F.3d 313, 324-25 (7th Cir. 2009) (holding that the defendants forfeited their qualified immunity argument when they raised it for the first time in their reply brief).

## Conclusion

Defendants' summary judgment motion is denied as to Perkins's unsanitary conditions claim arising from the pest infestation in his cell and his inadequate access to cleaning supplies, and otherwise is granted. This case will proceed to trial on the surviving claims.

January 17, 2018  _____
United States District Judge